# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

MELANIE HOGAN SLUDER, et al.

    Plaintiff,

v.

REBECKA PHILLIPS, et al.,

    Defendants.

Civil Action File No.:
4:24-cv-00181-WMR

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SHARON ELLIS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION.

#### A. Preliminary Statement.

Defendant Sharon Ellis was working for the Sheriff of Gilmer County on August 26, 2022, when she was instructed to pick up a runaway juvenile, Alexis Sluder, and transport her from the Fannin-Gilmer County line to the State of Georgia Department of Corrections' Regional Youth Detention Center ("RYDC") in Dalton. Ellis knew that Sluder, then sixteen years old, generally had a history of drug use, but was not aware that Sluder had swallowed a potentially fatal dose of methamphetamine at the time of the transport. This case thus hinges on the issue of

1

whether a deputy sheriff can be held liable for violation of constitutional rights under the Fourteenth Amendment despite having first learned that a juvenile had ingested methamphetamine ***after*** relinquishing custody to the State of Georgia. Though Sluder's subsequent death while in the custody of the State of Georgia due to drug overdose is a tragic loss, Ellis is entitled to qualified immunity and simply cannot be held liable for violation of Sluder's Fourteenth Amendment rights under the circumstances and facts of this case.

### B. Statement of Facts.

For the sake of brevity, Ellis hereby incorporates her Statement of Material Facts, filed contemporaneously with her Motion, into this Memorandum of Law.

### C. Statement of the Case.

This case arises from the drug overdose death of a sixteen-year-old named Alexis Sluder while in the custody of the State of Georgia at a youth regional detention center in Dalton, Georgia. On July 23, 2024, Plaintiffs initiated this case by filing a complaint in this Court.[1] In their complaint, Plaintiffs named multiple party defendants, including Ellis.[2] On August 26, 2024, Ellis filed an answer to

---

[1] *See* Doc. 1.
[2] *Id*. at ¶ 34.

2

Plaintiffs' complaint.[3]

Plaintiffs on June 12, 2025, filed an amended complaint which serves as the operative complaint for this action.[4] In the amended complaint, Plaintiffs allege a single claim against Ellis under Section 1983 of deliberate indifference in alleged violation of Sluder's Fourteenth Amendment rights.[5] Ellis on June 25, 2025, answered Plaintiffs' amended complaint, raising the defense of qualified immunity.[6] Ellis now moves for summary judgment as to Plaintiffs' claims pending against her.

## II.    ARGUMENT AND CITATION TO AUTHORITY.

### A. Standard of Review.

Summary judgment is appropriate "'if [Ellis] shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law.'"[7] As the movant, Ellis bears the initial burden of showing this Court "the basis for [her] motion, and identifying [evidence]…which [she] believes demonstrate[s] the absence of a genuine issue of material fact"[8] "'Once [Ellis] adequately supports

---

[3] *See* Doc. 27.

[4] *See* Doc. 105.

[5] Doc. 105 at ¶¶ 316 – 328.

[6] *See* Doc. 107.

[7] *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[her] motion, the burden shifts to…[Plaintiffs]…to show that specific facts exist that raise a genuine issue for trial.'"[9]

### B. Plaintiffs cannot recover against Ellis under Section 1983 because of her entitlement to qualified immunity.

#### 1. The qualified immunity standard for summary judgment.

As a deputy sheriff, Ellis is protected by qualified immunity, which shields "'government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known.'"[10] "This immunity balances the need for official accountability with the need to permit officials to engage in their discretionary duties without fear of personal liability or harassing litigation."[11]

At the summary judgment stage, the facts are "approach[ed] from the plaintiff's perspective because 'the issues…concern 'not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law.'"[12] It must be "stressed, the 'facts, as accepted

---

[9] *Mosely*, 694 F.3d at 1300 (quoting *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010)).

[10] *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 816 – 818, 172 L. Ed. 2d 565 (2009)).

[11] *Id.* at 1220 (citing *Pearson*, 555 U.S. at 231).

[12] *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (citation omitted).

at the summary judgment stage of the proceedings, may not be the actual facts of the case.'"[13]  But, despite this "pro-plaintiff perspective[,]…'a mere scintilla of evidence in support of the [plaintiff's] position is insufficient to defeat a motion for summary judgment.'"[14]

Courts apply a burden shifting framework to the qualified immunity analysis. First, Ellis "'must…establish that [s]he was acting within the scope of [her] discretionary authority when the alleged wrongful act occurred.'"[15] "If [s]he was, the burden…shifts to [Plaintiffs] to overcome…qualified immunity…"[16]

## 2.  Ellis acted within her discretionary authority.

For qualified immunity to shield Ellis, she "must first establish [she was] acting within the scope of [her] discretionary authority when the alleged wrongful acts occurred."[17]  To determine whether Ellis acted in her discretionary authority, this Court should not "'focus[] on whether the acts in question involved the exercise of actual discretion, [but rather]…whether they are of a type that fell within [Ellis']

---

[13]  *Id.* (citation omitted).

[14]  *Saunders v. Sheriff of Brevard Cty.*, 735 F. App'x 559, 563 (11th Cir. 2018) (*per curiam*) (citation omitted).

[15]  *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citation omitted).

[16]  *Id.* at 1319 (citation omitted).

[17]  *Melton*, 841 F.3d at 1221 (citing *Lee*, 284 F.3d at 1194).

job responsibilities.'"[18]

As a deputy sheriff, Ellis' duties included transporting individuals to be held in custody. Specifically, Ellis was required on multiple occasions to transport juveniles to the RYDC in Dalton as part of her job duties.[19] The Eleventh Circuit has previously held that a law enforcement officer clearly acts within their discretionary authority when their job duties include transporting individuals to facilities to be held in custody.[20] Ellis' transport of Sluder clearly fell within her typical job responsibilities as a deputy sheriff. Ellis should be considered to have acted in her discretionary authority and the burden shifts to Plaintiffs to show that qualified immunity is not appropriate.

### 3. Ellis did not violate Sluder's clearly established constitutional rights.

#### i. The test for determining whether qualified immunity is appropriate.

Since Ellis has satisfied her initial burden of showing that her actions were

---

[18] *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Holloman v. Harland*, 370 F.3d 1252, 1256 – 1266 (11th Cir. 2004)).

[19] *See* Defendant Sharon Ellis' Statement of Material Facts ("Defendant's SMF") at ¶ 9.

[20] *See Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002); *see also Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994).

taken within her discretionary authority, the burden shifts to Plaintiffs to demonstrate that Ellis is not entitled to qualified immunity.[21] Courts apply a two-step test to determine whether qualified immunity is appropriate.[22] And, since "[q]ualified immunity is a 'muscular doctrine,'… [Plaintiffs] must satisfy both elements of [the] two-pronged inquiry…to prove…[Ellis']…liability."[23]

The initial step is for the "court … to … consider … this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'"[24] If the answer to the first inquiry is yes, then "the court moves to the second step, which is to consider whether the constitutional right was 'clearly established' on the date of the violation."[25] However, this Court may consider the prongs of this analysis in either order and Ellis is entitled to qualified immunity if Plaintiffs fail to establish either prong.[26]

---

[21] *See Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (citing *Lee*, 284 F.3d at 1194).

[22] *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007).

[23] *Saunders*, 735 F. App'x at 564 (internal citation omitted).

[24] *Id.* at 1202-03 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[25] *Id.* at 1203 (quoting *Katz*, 533 U.S. at 201).

[26] *Jarrad v. Sheriff of Polk Cty.*, 115 F.4th 1306, 1323 (11th Cir. 2024) (citing *Piazza v. Jefferson Cty.*, 923 F.3d 947, 951 (11th Cir. 2019)).

ii. **Ellis did not violate Sluder's Fourteenth Amendment rights when transporting and delivering her to the custody of the State at the RYDC.**

a. **Standard for deliberate indifference to serious medical needs claims under the Fourteenth Amendment.**

Deliberate indifference claims brought by pre-trial detainees under the Fourteenth Amendment are analyzed based on the same standard applicable to such claims under the Eighth Amendment.[27] Under the Eighth Amendment, deliberate indifference to a prisoner's serious medical needs is prohibited if the indifference is so deliberate that it "constitutes the unnecessary and wanton infliction of pain."[28] "To prevail on a claim of deliberate indifference, [Plaintiffs] 'must satisfy both an objective and subjective inquiry…'[29]

As the Eleventh Circuit has recently clarified, Plaintiffs must first show, "as a threshold matter, that [Sluder] suffered a deprivation that was, 'objectively, 'sufficiently serious.'"[30] Second, Plaintiffs "must demonstrate that [Ellis] acted with

---

[27] *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005)).

[28] *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

[29] *Stalley v. Cumbie*, 124 F.4th 1273 (11th Cir. 2024) (internal citations omitted).

[30] *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

'subjective recklessness as used in the criminal law,'…and to do so [they] must show that [Ellis] was actually, subjectively aware that [her] own conduct caused a substantial risk of serious harm to [Sluder]–with the caveat…that even if [Ellis] 'actually knew of a substantial risk to [Sluder's] health or safety,' [s]he 'cannot be found liable…if [s]he 'responded reasonably to the risk.'"[31] And, third, Plaintiffs "'must establish a 'necessary causal link' between the challenged conduct and [Sluder's] injuries…'"[32] And, to meet this standard, Plaintiffs must demonstrate that Ellis "was 'both [] aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [] must also [have] draw[n] the inference.'"[33]

### b. Ellis was not aware that Sluder suffered from a serious medical need.

In the Eleventh Circuit, a "'serious medical need' [is] one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment."[34] Though Ellis suspected that Sluder was

---

[31] *Wade*, 106 F.4th at 1262 (citations omitted).

[32] *Stalley*, 124 F.4th 1273 (11th Cir. 2024) (internal citations omitted).

[33] *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)).

[34] *Burnette*, 533 F.3d at 1330.

a drug user based upon her past interactions with her and her appearance at the time Ellis picked her up for transport, this is not sufficient to show that Sluder had a serious medical need at the time she was in Ellis' custody because Sluder acted normally and did not exhibit any signs of having ingested methamphetamine sufficient to cause an overdose.[35]

In *Johnson v. Bessemer*, the Eleventh Circuit found that the plaintiff failed to establish a serious medical need despite a pre-trial detainee having suffered a fatal poly-drug overdose.[36] The plaintiff in *Johnson*, the pre-trial detainee's mother, sued a jailer alleging deliberate indifference and argued that the pre-trial detainee "suffered from a serious medical need because a lay person would recognize that someone who is non-responsive after consuming an unknown quantity of drugs requires medical treatment."[37] Although the jailer suspected that the pre-trial detainee had taken drugs before coming to jail and learned from other inmates that she had consumed Xanax, there was no evidence that the jailer was aware that the pre-trial detainee had also taken methadone and cocaine and the jailer had no medical training to assess the side effects of Xanax. This led the Eleventh Circuit to conclude

---

[35] *See* Defendant's SMF at ¶¶ 25, 29, 43.

[36] 741 F. App'x 694 (11th Cir. 2018).

[37] *Id*. at 699

that it would not have been obvious to the jailer, as a lay person, that the pre-trial detainee was overdosing.[38]

Similarly, Ellis did not have specialized training allowing her to assess whether an individual was suffering from a methamphetamine-related drug overdose.[39] As a lay person without medical training, Ellis was not in a position to assess whether Sluder had ingested a potentially fatal dose of methamphetamine when she was not demonstrating any symptoms of a drug overdose while in Ellis' custody. Indeed, the instant case is an even stronger case than *Johnson* because the pre-trial detainee in that case was passed out and could not be roused by the jailer, who thought she was simply asleep, after shaking her several times whereas Sluder did not demonstrate any signs of a drug overdose while in Ellis' custody. In other words, while Sluder obviously ultimately suffered a serious medical need, she did not suffer such need while in Ellis' custody and Ellis thus cannot be held liable for violation of Sluder's constitutional rights under the Fourteenth Amendment.

### c. Ellis was not deliberately indifferent to a serious medical need.

As to the second prong of this analysis, "[s]ubjective knowledge of the risk

---

[38] *Id*. at 699-700.
[39] *See* Defendant's SMF at ¶ 7.

requires that [Ellis] be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists…"[40] "No liability arises under the Constitution for 'an official's failure to alleviate a significant risk that [s]he should have perceived but did not…'"[41] In other words, "'[t]he test for deliberate indifference is a subjective test, not an objective test for collective knowledge.'"[42]

Even assuming Plaintiffs can establish that Sluder suffered from a serious medical need, there is no evidence that Ellis was aware of such need while Sluder was in her custody. This is critical because when an official relinquishes custody of an individual to another entity without being aware of any urgent need for medical treatment, there is no violation of constitutional rights under the Fourteenth Amendment.[43] For example, in *Andujar v. Rodriguez*, the Eleventh Circuit held that paramedics did not violate a pre-trial detainee's constitutional rights under the Fourteenth Amendment because the paramedics were not aware of any urgent medical need before they transferred the plaintiff to police custody.[44]

---

[40] *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017).

[41] *Burnette*, 533 F.3d at 1331 (quoting *Farmer*, *supra*).

[42] *Burnette*, 533 F.3d at 1331 (quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

[43] *See Andujar v. Rodriguez*, 486 F.3d 1199, 1204 (11th Cir. 2007).

[44] *Id.*

Ellis was not aware that Sluder had ingested methamphetamine at the time she transported her to the RYDC and did not observe any indications that Sluder required any medical treatment for a drug overdose while Sluder was in her custody.[45] As in *Andujar*, Ellis was not aware that Sluder required medical treatment at the time she relinquished custody to the State of Georgia. Ellis thus should not be considered to have been subjectively aware of a serious medical need related to a drug overdose for the purpose of establishing deliberate indifference.

In *Burnette v. Taylor*, a pre-trial detainee died of a drug overdose while in a sheriff's custody at a jail in Bacon County, Georgia, after having ingested Alprazolam, Hydrocodone, Benzoylecgonine, and Fentanyl.[46] The pretrial detainee was arrested by two deputy sheriffs after his stepfather called and reported that he had stolen Duragesic patches prescribed to the stepfather. Before the deputies arrested the pre-trial detainee, but unbeknownst to the deputies, the pre-trial detainee had "eaten one or more of the Duragesic patches, which are intended to be placed on the skin for measured, time-released pain relief over a period of 72 hours."[47]

The deputies were aware at the time of the pre-trial detainee's arrest that he

---

[45] *See* Defendant's SMF at ¶¶ 22-23, 25.
[46] *Burnette*, 533 F.3d at 1329 – 30.
[47] *Id*. at 1330

had allegedly stolen Duragesic patches, were warned by the stepfather that he was "strung out" on pills, and was in possession of a bottle of prescription pills at the time of his arrest.[48] The symptoms exhibited by the pre-trial detainee at the time of his arrest were consistent with some use of drugs or alcohol but did not necessarily indicate that medical attention was required. And the deputies left the pre-trial detainee "at the jail several hours—at least, five hours—before his death."[49] Based upon these facts, the Eleventh Circuit concluded that the pre-trial detainee's Fourteenth Amendment rights were not violated by the deputies despite his subsequent death by overdose.[50]

Like the deputies in *Burnette* who were not aware that the pre-trial detainee had eaten Duragesic patches, Ellis was not aware that Sluder had ingested methamphetamine before she relinquished custody to the State. Further, the instant case is even stronger for finding that Ellis did not violate Sluder's constitutional rights because the pre-trial detainee in *Burnette* exhibited at least some signs of drug intoxication before the deputies delivered him to jail whereas Sluder did not exhibit any symptoms of a drug overdose while in Ellis' custody. As such, under *Burnette*,

---

[48] *Id.* at 1331.
[49] *Id.*
[50] *Id.*

this Court should find that Ellis did not violate Sluder's constitutional rights under the circumstances and facts of this case.

In addition, there is no evidence of record to show that Ellis subjectively knew, even after learning that Sluder had ingested methamphetamine, the amount of the dose ingested or that Sluder was in serious medical danger. Ellis was not aware of what happened with Sluder after Ellis released her to the State's custody at the RYDC. Ellis had no way to know the status of Sluder's condition or that she was in serious medical danger after having transferred custody of Sluder to the State and having left the RYDC facility. In other words, Ellis was not in a position to monitor someone who was not in her custody and was instead inside a secure facility while she was outside the gate of the facility.

Though Ellis was requested to transport Sluder to the hospital as a courtesy to be checked out by medical professionals, Ellis was not advised that Sluder was demonstrating acute signs of overdose or that she could die if not transported to a hospital. In fact, Sluder remained inside the RYDC, outside of Ellis' custody and supervision, for hours before she passed away. Without this required subjective knowledge of the risk, Ellis should not be held to have violated Sluder's constitutional rights under the Fourteenth Amendment.

15

Further, Ellis was not deliberately indifferent because her response to learning that Sluder claimed she had eaten methamphetamine was reasonable under the circumstances. Ellis called RYDC staff as soon as she discovered a substance that appeared to be meth on the rear seat of her vehicle.[51] Though Ellis was aware that she did not have the authority to transport Sluder to the hospital after having relinquished custody to the State, she called her supervisor to confirm that she was not allowed to re-take custody of Sluder and undertake the transport.[52]

And, even if she had the authority to call 911 to obtain treatment for Sluder, a dubious proposition given that Sluder was in the custody of the State in a secure facility, Ellis had no reason to believe that the RYDC staff would not call 911 or obtain emergency medical treatment for Sluder if she demonstrated symptoms of a methamphetamine overdose.[53] Thus, there was no authority or reason for Ellis to call 911 herself.

Deliberate indifference requires a showing that Ellis acted with recklessness in the face of knowledge that Sluder faced a substantial risk of serious harm.[54] But

---

[51] *See* Defendant's SMF at ¶ 51.
[52] *Id*. at ¶¶ 62-63.
[53] *Id*. at ¶¶ 59-60.
[54] *Wade*, 106 F.4th at 1262.

nothing in the record demonstrates that Ellis acted recklessly given that she was unaware that Sluder had eaten methamphetamine at any point while in her custody. Given the facts of this case, Ellis should not be found to have violated Sluder's constitutional rights under the Fourteenth amendment.

### 4. Even if Ellis did violate Sluder's constitutional rights under the Fourteenth Amendment, such rights were not clearly established at the time of the alleged violation.

"'Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what [s]he is doing is unlawful.'"[55] As the Eleventh Circuit has further explained, "'[f]or the law to be clearly established to the point that qualified immunity does not apply, the law must have been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what [s]he is doing violates federal law.'"[56] And, as the Supreme Court has cautioned:

> We have repeatedly told courts…not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a

---

[55] *Donald v. Norris*, 131 F.4th 1255, 1266 (11th Cir. 2025) (citation omitted).
[56] *Worley v. City of Lilburn*, 408 F. App'x 248, 252 (11th Cir. 2011) (*per curiam*) (quoting *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000)).

broad general proposition.[57]

"To assess whether previous cases clearly establish the law 'under the 'materially similar' inquiry, [this Court should] ask whether the factual scenario that the official faced is 'fairly distinguishable from the circumstances facing a government official' in a previous case.'"[58] Under this analysis, "[i]f the facts are distinguishable, 'the cases are not materially similar and, thus, provide insufficient notice to the official to clearly establish the law.'"[59]

Since Ellis has discharged her burden of showing that she acted within her discretionary authority, Plaintiffs must demonstrate that the law was clearly established. Ellis is not aware of any case law in the Eleventh Circuit that is particularized to the circumstances of this case that would demonstrate that Ellis should have known that her actions or inactions were violative of the rights secured under the Fourteenth Amendment.[60]  As such, Ellis is entitled to qualified immunity.

---

[57] *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (internal citations and quotation marks omitted).

[58] *Donald*, 131 F.4th at 1266 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012)).

[59] *Donald*, 131 F.4th at 1266 (quoting *Terrell*, 668 F.3d at 1256).

[60] *Corbitt v. Vickers*, 929 F.3d 1304, 1316 (11th Cir. 2019) (citation omitted) (for qualified immunity, "'the clearly established law must be 'particularized' to the facts of the case.'").

## III.   CONCLUSION.

Ellis did not know that Sluder had ingested methamphetamine prior to relinquishing custody to the State and, once custody was relinquished, there was nothing that Ellis could do help Sluder. This is not deliberate indifference. Ellis thus requests that this Honorable Court enter an order granting summary judgment as to Plaintiffs' claims against her.

Respectfully submitted by:

WOMACK, RODHAM & RAY, P.C.

*/s/ Ronald R. Womack*
Georgia Bar No. 773650
rwomack@wrrlawfirm.com

*/s/ Ryan L. Ray*
Georgia Bar No. 561765
rray@wrrlawfirm.com

P.O. Box 549
109 East Patton Street
LaFayette, Georgia 30728
Tel: (706) 638-2234
Fax: (706) 638-3173

ATTORNEYS FOR DEFENDANT
SHARON ELLIS

19

## LR 7.1(D), NDGa. CERTIFICATION

In accordance with LR 7.1(D), I certify that this document has been prepared with 14-point Times New Roman font in compliance with LR 5.1(C), NDGa.

Submitted by:

WOMACK, RODHAM & RAY, P.C.

*/s/ Ryan L. Ray*
Georgia Bar No. 561765
rray@wrrlawfirm.com

P.O. Box 549
109 East Patton Street
LaFayette, Georgia 30728
Tel: (706) 638-2234
Fax: (706) 638-3173

OF COUNSEL FOR DEFENDANT
SHARON ELLIS

20

## CERTIFICATE OF SERVICE

On September 17, 2025, I electronically filed the *Brief in Support of Defendant Sharon Ellis' Motion for Summary Judgment* with the Clerk of Court using the CM/ECF which will automatically provide electronic service of this document to all counsel of record.

Submitted by:

WOMACK, RODHAM & RAY, P.C.

*/s/ Ryan L. Ray*
Georgia Bar No. 561765
rray@wrrlawfirm.com

P.O. Box 549
109 East Patton Street
LaFayette, Georgia 30728
Tel: (706) 638-2234
Fax: (706) 638-3173

OF COUNSEL FOR DEFENDANT
SHARON ELLIS